NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHANNA A.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.H., K.H.,
*Appellees*.

No. 1 CA-JV 18-0130
FILED 9-20-2018

Appeal from the Superior Court in Maricopa County
No.  JD530257
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

---

J O H N S E N, Judge:

¶1            Shanna A. ("Mother") appeals the superior court order severing her parental rights to her two children, born in 2013 and 2014, respectively.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2            The Department of Child Safety ("DCS") took the children into custody in August 2016 after it received a report alleging, among other things, that Mother was using heroin and opiates and had a meth lab in her home.  When investigators visited her home, they found hazardous conditions, including pill bottles and cleaning supplies within the children's reach.  Mother admitted to investigators she was using prescription drugs without a prescription.  The superior court found the children dependent as to Mother and placed the children with their paternal grandmother.

¶3            Under a case plan of reunification, DCS offered Mother substance-abuse testing through TASC, substance-abuse treatment through TERROS, self-referral for parenting classes, domestic violence classes and a parent-aide referral upon 30 days of sobriety.  The court also ordered her to submit to urinalyses and hair-follicle testing.

¶4            When Mother appeared for her intake appointment at TERROS, she refused treatment, telling personnel there that she did not have a substance-abuse problem.  Nevertheless, she tested positive for morphine during that appointment.  A few weeks later, Mother self-referred to Community Bridges, where she reported that she was experiencing withdrawal symptoms and that her drugs of choice were Percocet and heroin.  She told personnel there that she had a four-year history of opiate use, had been using heroin for the previous six to nine months, and recently had turned to opiates once again to cope after DCS removed her children. Community Bridges diagnosed her with "opioid use disorder, severe" and offered her individual and group substance-abuse

2

counseling, addiction medicine appointments, supportive case management services and nursing services.

¶5 Mother did not participate in substance-abuse treatment through Community Bridges for longer than several weeks; her last appointment with a physician there was on November 1, 2016, despite numerous attempts thereafter by Community Bridges to contact Mother to resume services. According to Mother, she quit participating with Community Bridges because the medical staff there prescribed her a medication that she "felt like [she] didn't need to be taking."

¶6 Mother was required to submit to random urinalyses about once a week through TASC. Through February 9, 2017, however, she submitted only 15 of the required 22 samples, all of which were negative. On February 9, she submitted a urine sample that tested negative, but did not submit to a court-ordered hair-follicle test. Thereafter, Mother stopped complying with the TASC drug-testing regime. She called TASC only sporadically and did not submit to any testing again until June 23, 2017.

¶7 There was additional evidence that she resumed drug use in the meantime. Police stopped a vehicle in January 2017 and found straws used to snort Xanax. Mother was a passenger in the car and, although she was not cited, she admitted she used straws to snort the drug. In April 2017, she was cited for possession of drug paraphernalia after she admitted that she possessed straws used to snort Xanax and was unable to produce a prescription for the drug. And in May 2017, Mother's doctor's office reported to police that someone had tried to call in a fraudulent Xanax prescription for Mother. Meanwhile, DCS offered Mother a second TERROS referral in April 2017, but she failed to complete the required intake, and the agency closed the referral unsuccessfully in July 2017.

¶8 Mother failed to participate in any of the individual counseling that had been recommended for her. The DCS case manager referred her for counseling in February 2017, but Mother did not attend the intake appointment and did not participate in any of the counseling.

¶9 Mother participated in scheduled visits with her children and was generally appropriate at those visits. But she missed 13 one-on-one sessions with parent aides, and, according to the DCS case manager, her participation in parent-aide sessions was "[e]xtremely minimal."

¶10 At a hearing on June 6, 2017, the court ordered DCS to refer Mother for a hair-follicle test that day. Mother provided a urine sample on

June 23, which tested negative, but she did not provide a hair sample, and did not submit to another drug test until November 2, 2017.

¶11          Over Mother's objection, the superior court in June 2017 granted DCS's motion to change the case plan to severance and adoption. DCS moved for termination, and the court set the severance hearing for December 13, 2017.

¶12          With the severance hearing scheduled, Mother was closed out of parent-aide services unsuccessfully in August 2017 because of her failure to participate. She was arrested in October 2017 and charged with driving under the influence with minors in the car. She claimed she had drunk just one beer, but a breath test showed an alcohol content of 0.131. She also tested positive for cocaine in two separate urinalyses and a hair-follicle test in November. After those results, DCS referred Mother to TERROS for a third time, but she failed to attend an intake appointment.

¶13          The superior court heard evidence on the motion to sever on December 13, 2017, and February 1, 2018. The court granted the motion, severing Mother's parental rights to her children under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(a) and – (b) (2018) (nine months' time in care and six months' time in care, respectively).[1] Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A) (2018), 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).

## DISCUSSION

¶14          The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds set out in A.R.S. § 8-533(B). *Michael J.*, 196 Ariz. at 249, ¶ 12. Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). "Because the [superior] court is in the best position to weigh evidence and assess witness credibility, we accept [that] court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 234 Ariz. 1, 3, ¶ 9 (2016).

---

[1]          Absent material revision after the relevant date, we cite the current version of a statute or rule.

¶15        Under A.R.S. § 8-533(B)(8)(a), parental rights may be terminated when

> [t]he child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order . . . and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement.

The circumstances at issue under this statutory ground for severance are those "existing at the time of the severance." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007).

¶16        On appeal, Mother does not contest the court's findings that the children have been in out-of-home placement for more than nine months.  She does not argue DCS failed to comply with its obligation to offer her appropriate reunification services, nor does she dispute the court's finding that termination of her rights is in the best interests of the children.  Instead, she argues only that the evidence does not support the court's finding that she substantially neglected or willfully refused to remedy the circumstances that caused the children to be taken into care.

¶17        Mother concedes she "has not completely overcome her difficulties," but argues she "has made appreciable efforts to remedy the circumstances that caused" the children to require care.  She points to evidence that she participated in parenting classes and consistently participated in visits with her children, and that at trial, no one questioned her interactions with her children during those visits.  She also points out that she is employed and earns enough to provide for her children.  She contends that her job "often meant that she was unable to attend drug testing and some other services that were only available at the same time as her work hours."

¶18        The court found that Mother missed about half the required weekly urinalyses from September 2016 through March 2017, and thereafter, tested just once in June 2017 and three times in November 2017.  It also found Mother submitted a hair-follicle sample in November 2017 that was positive for cocaine, as were urine samples she submitted about the same time.  The evidence supports these findings.  And the case manager reported that during the entire proceeding, Mother failed to complete any substance-abuse treatment.

¶19        Although Mother argues her work schedule effectively prevented her from undergoing weekly random drug tests, her testimony

that she worked from 11 a.m. to 11 p.m. four days a week was inconsistent with other contemporaneous accounts she gave to a parent aide. She also missed several tests on days when her claimed work schedule did not conflict with the drug-testing regime. Further, Mother did not offer evidence that she asked to have her drug testing moved to a different provider that could accommodate her schedule.

**¶20** Beyond Mother's failure to comply with drug testing, the court also found that she never participated in drug-counseling services offered through TERROS. She participated in counseling through Community Bridges from September through November 2016, but then stopped going regularly. Community Bridges tried without success to contact her in January 2017 to have her come for services. The court also found that although Mother was referred for individual counseling, she did not complete an intake appointment.

**¶21** The evidence recited above supports the superior court's findings that Mother substantially neglected or willfully refused to remedy the circumstances that caused her children to remain in the care of the State. Although she participated in visits and is bonded with the children, the superior court did not abuse its discretion by concluding that evidence did not outweigh evidence that she persistently disregarded the opportunities she had to attend drug-abuse counseling and to participate in drug testing.

**¶22** Mother's substance abuse is what caused the children to be taken into care, and, as the superior court found, her drug use continued to be "a major obstacle to family reunification." The record supports the court's conclusion that she substantially neglected or willfully refused to remedy her persistent abuse of drugs. Although she argues to the contrary, we will not accede to her request that we reweigh the evidence. *Mary Lou C.*, 207 Ariz. at 47, ¶ 8.

**CONCLUSION**

**¶23** Because substantial evidence supports the superior court's findings and conclusions, we affirm its order severing Mother's parental rights.[2]



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2] Because we affirm the superior court's decision under the statutory nine-month ground for severance, we need not address the six-month ground. *See Michael J.*, 196 Ariz. at 251, ¶ 27.